Richard S. Heller, J.
TMs claim arises from the appropriation of property for purposes connected with the State arterial highways passing through cities pursuant to article 12-B of the Highway Law.
Prior to the taking, claimant owned a plot of land located at the southwest corner of Court Street and Oswego Boulevard in the City of Syracuse. This plot had a frontage on Oswego Boulevard of approximately 401 feet, a frontage on Court Street of about 213 feet, and a frontage on North Clinton Street of about 397 feet. The entire plot contained 92,087 square feet.
Claimant operated its business consisting largely of photo copying, microfilming and record book manufacturing in a building with its main entrance facing on Oswego Boulevard and located at the northerly part of the plot. The building was partly one story and partly two story and contained about 37,200 square feet.
Prior to the taking, both Court Street and Oswego Boulevard were heavily traveled streets with Oswego Boulevard in particular carrying traffic going to and from the center of Syracuse and large industrial developments to the north. Claimant’s real estate experts testified that in their opinion, the highest and best use of the property prior to the taking was for retail and office purposes.
Court Street was a heavily traveled artery from the east side of Oswego Boulevard running north. It was not heavily traveled to the west of Oswego Boulevard since Court Street ended at North Clinton Street at the westerly end of claimant’s property.
The project as a whole provided for the reconstruction of Oswego Boulevard as a divided highway with each traffic lane 37 feet in width separated by a 13-foot middle strip. The plans *750 provided for this divided highway to be depressed below the existing grade of Oswego Boulevard varying depths but being between 14 and 15 feet below grade to the east of claimant’s property. The ingress and egress from the traffic lanes of this new divided highway is provided by means of ramps connecting to access or service roads included within the boundaries of the State’s right of way. A part of what was formerly Oswego Boulevard was designed as a 32-foot service roadway carrying north and southbound, traffic with a six-foot sidewalk on the westerly side thereof. The property appropriated from claimant consisting of 2,864 square feet was included in the 32-foot roadway.
Prior to the taking, to the east of claimant’s property there was Oswego Boulevard and then property improved with various types of buildings extending eastward to Sunset Avenue which was the next public street to the east of Oswego Boulevard. After the taking and following completion of the project as a whole, the entire property to the east of claimant’s land to the east line of Sunset Avenue constituted the State’s right of way for the reconstructed and relocated Oswego Boulevard. Claimant’s property abutted on a 32-foot-wide public street carrying both north and southbound traffic. To the east of that was a landscaped slope downward some 14 or 15 feet from the grade of claimant’s property and the 32-foot roadway to the southbound 37-foot traffic lane of Oswego Boulevard. To the east of that traffic lane there were a 13-foot strip and a 37-foot northbound traffic lane and then a landscaped slope upward to the grade of Sunset Avenue.
The plans also provided for a change in Court Street which prior to the taking intersected Oswego Boulevard with the right of way on the east thereof being somewhat wider than the right of way on the west so that the intersection of the south line of Court Street and the east line of Oswego Boulevard was somewhat south of a prolongation of the north line of claimant’s property along Court Street. The project plans provided for a bridge for Court Street over the reconstructed and relocated Oswego Boulevard from Sunset Avenue at an angle to the southwest so that this bridge would bring Court Street traffic into the 32-foot service road abutting claimant’s property at about the middle of that property instead of at the north end of the property.
The damages sought by the claimant are based upon a contention that prior to the taking the highest and best use of this property was for retail purposes. Its experts testified that the building had a value of $380,000 and the land had a value of *751 $2 per square foot or a total of $184,174. Claimant’s experts assert that after the taking the highest and best use of the property was for manufacturing or industrial purposes for which purposes the building had a value of only $342,000 and the remaining land had a value of only $.75 per square foot resulting in damages of approximately $150,000.
The difficulty with claimant’s position is that it is seeking damages based on factors which this court may not consider in the evaluation of the damage.
Prior to the taking, claimant owned property with access to and from public streets on the west, north, and east. After the taking, claimant owned property with access on public streets to the west, north, and east. The only change was that access on the east instead of being from a heavily traveled main artery was now from a 32-foot street which did not have the physical capacity for the volume of traffic carried on the street which previously abutted claimant’s property. Instead, that heavy volume of traffic will now be carried in much wider traffic lanes considerably to the east of claimant’s property and depressed some 14 or 15 feet below claimant’s property.
The claimant’s proof of damage is based upon a contention that the highest and best use of the land was changed from retail to industrial by loss of access resulting from the appropriation. It is patent, however, that the access which claimant is talking about is not physical access but exposure to a high volume of traffic. Consequential damages such as are encompassed in claimant’s proof may only be awarded where such damages are those resulting from a direct taking. (Van Aken v. State of New York, 261 N. Y. 360.) The direct taking of 2,864 square feet for utilization as part of a public street at grade with claimant’s property did not in any way affect the actual physical accessibility of claimant’s property.
Claimant actually seeks recovery here of “ diminution in the market value of the remaining portion as a result of the whole improvement and consequent diversion of traffic ’ ’ and this may not be considered by this court in evaluation of damage to claimant’s property. (McHale v. State of New York, 278 App. Div. 886; affd. 304 N. Y. 674; Crear v. State of New York, 2 A D 2d 735.)
The claimants had no property or other vested right in the continuance of a heavy traffic flow-over the street abutting claimant’s land and a change in the reasonably anticipated flow of traffic will not give rise to any damages to be assessed against the State so long as the abutting owner is not deprived of reasonable ingress and egress.
*752 Any consequential damage suffered by the claimant was the sole result of the whole improvement and consequent diversion of traffic. It was not the result of the direct taking of claimant’s property and such direct taking did not deprive the claimant of a suitable means of access to its property. Under these circumstances the proof of consequential damage will not support an award for such damages.
The court finds that by reason of the appropriation the claimant has been damaged in the sum of $5,728 and claimant is entitled to an award in that amount Avith interest thereon from March 14, 1956 to the date of entry of judgment.
The proposed findings of fact and conclusions of law submitted by the parties have been marked and the facts found therein are made a part of this decision which constitutes the written decision of this court. Certain proposed findings submitted by the parties have been refused as such findings are only partly correct or worded in such manner as to require a refusal or are irrelevant to a determination of the claim.
Let judgment be entered accordingly.