Richard S. Heller, J.
This claim arose from the appropriation of real property pursuant to section 30 of the Highway Law. The details of the parcels appropriated are set forth on Map. No. 71R-1 annexed to the claim herein and reference is made to the map and description for a detailed description of the property. Parcel No. 149 contained an area of about .613 acres and Parcel No. 150 contained an area of about .572 acres. The appropriations of these two parcels, both of which lay to the south of Route 17 as it existed prior to the appropriation running between Bloomingburg and Monticello were made without any right of access to the property appropriated. Parcel No. 151 is immediately south of Parcel No. 149 and contains approximately .255 acres. Parcel No. 152 lay immediately south of Parcel No. 150 and contains approximately 1.602 acres. The *906 appropriation of the two latter parcels did not include a deprivation of right of access thereto.
All of the foregoing appropriations were in fee. The appropriation of Parcel No. 208 contained approximately .057 acres and was a rectangular shaped piece stretching southward from the southerly line near the easterly end thereof of Parcel No. 152 being about 100 feet by 25 feet and was an appropriation of a permanent easement for drainage purposes. The easement appropriated is so broad and leaves so little right of use in the owner that it is in effect a complete deprivation of value.
In 1946 the claimant purchased the plot of land from which these appropriations were made. This plot contained a total of approximately 135 acres, 35 acres of which consisted of a lake. The only improvement on the land at the time of purchase was an old farm house. In the year of purchase the claimant employed a surveying firm which laid out a substantial portion of the plot in building lots and roads: The plot had a frontage on Boute 17 of about 95 feet. Fifty feet of this frontage was utilized for the construction of a road which ran from Boute 17 completely through the property to a town road at the south thereof known as Saeket Boad. This road was conveyed to the Town of Thompson and became known as Murray Boad. Other roads on the plot were also constructed although not all plotted roads were opened.
Improvements were made in the lake by way of clearing and deepening and the construction of a beach area. Approval of the subdivision development was obtained from the Department of Health but no subdivision map was filed in the County Clerk’s office. The development was listed for sale with various real estate brokers in the area and an advertising campaign was undertaken principally by utilization of newspapers.
In 1947 or 1948 a ranch type home was built on one of the plots and was thereafter occupied a good part of each year by officers and owners of the claimant. A so-called model home was also erected.
In nine years from 1946 to 1955, a total of 15 parcels including from four to four and a half acres were sold. The deeds contained restrictions and required the erection of houses costing not less than $6,000 in terms of 1946 building costs on each plot. A right to the use of a common beach area at the lake was included in the sale of each plot.
Of the 15 parcels sold, with one exception, all of such parcels were within 500 feet of the lake. Part of the property appropriated had not been plotted and a portion of it was designated as reserved for commercial use. The claimant expended some *907 $40,000 in its development effort on the property including the erection of the model home but exclusive of the cost of the ranch type home occupied by claimant’s officers.
The appropriation took place on August 21, 1956 with the filing of the map and description in the Sullivan County Clerk’s office. Thereafter on August 9, 1957, the property remaining to the claimant was sold at public auction and the plot with the modern model ranch house was sold for $12,900 and the parcel containing the old farm house was sold for $6,600. The balance of the property was sold for $35,000 and a remaining small strip in proximity to the appropriated property was sold on March 1, 1958 for $1,250.
The property appropriated was along the northerly boundary of the property furthest from the lake and was that portion of the plot closest to Route 17 as it existed prior to the appropriation. The total area appropriated was about 3.099 acres. The claimant asserts that the direct damage for this appropriation amounted to $10,000 while the State asserted that the direct damage amounted to $2,150. The claimant asserts that there was consequential damage in the amount of $90,000 while the State asserted consequential damage of about $735.
Prior to the appropriation, access to this plot was available by Murray Road, Sacket Road and Lewis Street, all of which were town roads. The only change effected by the appropriation was to substitute for Route 17 at the northerly end of Murray Road, a service road paralleling the rebuilt Route 17 which was established as a controlled access highway as shown by the appropriation of Parcels 149 and 150 which included a deprivation of right of access thereto. After the appropriation and the construction of Route 17 and the service road, interchanges existed to the east of Murray Road three or four minutes away in time and west of Murray Road not more than five minutes away in time. Claimant asserts that the use of the service road as access to Murray Road or the utilization of a number of other town roads to reach the property involving ramps from the interchanges on Route 17 and a number of turns constituted unsuitable access.
The claimant’s entire contention for consequential damage rests upon the fact that after the appropriation Murray Road could be reached at its north end only from a service road and not from the main traffic artery known as Route 17. The claimant’s evidence, however, is insufficient to establish any right to compensation for damage resulting from this change. The claimant had no property or other vested right in having its property with access to a main traffic artery. (Hall & McChes *908 ney v. State of New York, 15 Misc 2d 748, affd. 11 A D 2d 899 [4th Dept.].) The existence of a service road in connection with exactly the same town roads which existed prior to the appropriation did not render the premises physically inaccessible or render the access unsuitable for any kind of vehicle or means of transportation that would ordinarily be seeking access to the property. At most the evidence establishes only a possible inconvenience arising solely from the relationship of the available town roads to the existing interchanges on a rebuilt Route 17. The claimant is not entitled to recover for mere inconvenience in access. (Holmes v. State of New York, 279 App. Div. 489; Crear v. State of New York, 2 A D 2d 735.)
The evidence establishes 17 actual transfers of property for consideration by the claimant from 1947 through 1955. The total area transferred consisted of between four and four and a half acres and all of the transfers with one exception lay within 500 feet of the lake. There was one of these transfers in 1947 and one in 1949. There were three in 1950 which included the model home, three in 1951, two in 1952, six in 1953 and one in 1955.
The record is not convincing that there was in fact a ready market for the plotted lots appropriated in whole or in part. There is no evidence of any market for commercial use of property in the area appropriated although the developer had indicated his intent to utilize some of the appropriated parcels for commercial purposes.
The court finds that the value of the property appropriated was $6,000.
The court may not grant an award for consequential damage based upon claimant’s assertion of loss of suitable access but is faced with the testimony of the State’s expert who found consequential damage of 35% of the land immediately adjoining the appropriated plot. There is no evidence as to the nature of this consequential damage. This expert was asked, “ Why did you consequentially damage that three acres at 35% ? ” His answer was, “ Well, in my opinion that was the damage to that immediate property.” This expert found no consequential damage to any other portion of the property. He made the point that the service road which was adjacent to the property where he found consequential damage, was nowhere nearly as heavily travelled as Route 17.
Under these circumstances the court must find that there is no evidence in this record of any consequential damage for which this claimant is entitled to an award.
*909 The court has viewed the premises. The claim has not been assigned.
The claimant is entitled to judgment in the sum of $6,000, with interest thereon from August 21,1956 to February 21,1957, and from November 20, 1957 to the date of entry of judgment.
Findings submitted by the parties have been marked and signed by the court. Let judgment be entered accordingly.