Robert J. Mangum, J.
This is a claim for the appropriation of claimants’ land pursuant to the provisions of chapter 678 of the Laws of 1928 as amended, which proceeding is described *1097 as Grade Crossing Elimination, Flushing Avenue, Maspeth, P.S.C. No. 11626, Queens County, Map No. 1, Parcel No. 1, and Map No. 2, Parcel No. 2.
The aforesaid map and description were filed in the office of the Department of Public Works on the 18th day of October, 1966; in the office of the County Clerk of Queens County on the 14th day of December, 1966.
The claim was filed with the Clerk of the Court of Claims and the Attorney-General on the 11th day of December, 1968 and has not been assigned or submitted to any other court or tribunal for audit or determination.
The court adopts the description of the appropriated property as shown on the map and description filed in the Queens County Clerk’s office, a copy of which is attached to the claim and same is incorporated herein by reference.
Claimants submit proof of ownership of the property by means of a deed dated March 15, 1966 from Thomas Cousin and Michael Cousin, grantors, to Thomas Cousin and Anna Cousin, grantees, recorded in the Queens County Clerk’-s office on the 15th day of March, 1966 in Liber No. 66 at Page No. 423.
Prior to the appropriation, the property consisted of 9,100 square feet located on Flushing Avenue at the southwest corner of 55th Street in Maspeth, Queens. The subject property was improved with a three-bay, brick and concrete block gasoline service station with concomitant land appurtenances. The property was irregular in shape and had two curb cuts along its frontage and two similar entrances on the 55th Street boundary. The property was leased to Shell Oil Company for a term of 15 years and operated by a subtenant. The subject property was zoned Ml-1 (light manufacturing district) with a gasoline service station permit.
The use of the subject property as a gasoline service station was consonant with its highest and best use prior to the appropriation.
The subject proceeding appropriated approximately 320 square feet of claimants’ property and comprised a triangular area extending 82.59 feet along the Flushing Avenue frontage and 8.21 feet in depth along the 55th Street boundary. Included within the taking was a revolving Shell sign and light pole. Parcel 2 of Map 2 consisted of a temporary easement comprising 965 square feet and encompassed a land mass which included a 108-isquare-foot concrete pump island. The temporary easement had a duration of 43 months. As a result of the appropriation the subject property also suffered a loss of 600 square feet *1098 of asphalt paving and 966 square feet of concrete matting. After the taking the shape of the subject property remained substantially the same although one curb cut along 55th Street was removed.
The basis for the appropriation was the elimination of a grade crossing three blocks east of claimants’ property. In order to accomplish the grade elimination, an underpass had to be built which caused a change in the character of Flushing Avenue. As a result of the improvement the subject property no longer has frontage along Flushing Avenue but adjoins a service road that converges with the avenue at approximately the middle of the property. Though it is physically possible for westbound traffic on Flushing Avenue to turn onto the subject property at this point, the procedure is extremely dangerous since their visibility of vehicles moving along the service road is partially obscured. The maneuver is equivalent to making a right turn from the extreme left lane with a fence creating an obstruction of the driver’s- vision. Eastbound traffic can no longer cross Flushing Avenue directly opposite the 'Subject property since there is an island dividing the artery at this point.
After the appropriation the highest -and best use of the subject property no longer was consonant with a gasoline service station but cohered to light manufacturing or industrial. The pivotal issue is whether this change in highest and best use of the subject property is an item of compensable damage.
It is the established rule of this State that consequential damages- may not be recovered by an abutting property owner for the diminution in value of his property because the State, in changing the course of an adjoining highway interferes with the access to his land or diverts traffic therefrom (Selig v. State of New York, 10 N Y 2d 34, 39; Bopp v. State of New York, 19 N Y 2d 368; Northern Lights Shopping Center v. State of New York, 20 A D 2d 415; Esso Standard Oil Co. v. State of New York, 9 A D 2d 840) unless the proof establishes that the remaining access is not merely circuitous but unsuitable or inadequate to the needs inherent in the highest and best use of the subject property (Priestly v. State of New York, 23 N Y 2d 152; Penningroth v. State of New York, 35 A D 2d 1024). This is a question of fact for the court to determine. (Lundquist v. State of New York, 33 A D 2d 950.)
The .facts disclosed herein indicate claimants continue to enjoy the same entrances and exits to the subject property as existed prior to the taking. There is one less curb cut along the boundary abutting 55th Street; however, taking into consider *1099 ation the one-way character of the street, this factor is not dispositive of the issue presented. The major difference between the before and after situation is that traffic, because of the existence of the service road and other changes to the avenue, is now relegated to a circuitous and inconvenient route, inadequate to the needs of a gasoline service station, in order to gain access thereto.
Gasoline stations have certain aspects indigenous to the nature of the services they render. Among these special characteristics is their availability to passing motorists. Where diversion of traffic affects the utility of a gasoline station site because exposure has been reduced or extinguished, the loss in value may not be compensated. The principle is relatively well settled in this State that a property owner has no vested right in the flow of traffic in front of his premises. (Nettleton Co. v. State of New York, 11 A D 2d 899; Hall & McChesney, Inc. v. State of New York, 15 Misc 2d 748, affd. 11 A D 2d 899.)
Diversion of traffic, however, may have the correlative property of interfering with .suitability of access. The facts operative in this case do not simply disclose a diminution in market value because traffic no longer passes unimpeded in front of claimants’ property; there has actually been a change in the highest and best use of the subject property because access from, Flushing Avenue is virtually impossible and the remaining circuitous route is unsuitable.
Notwithstanding the appropriation has left the subject property with sufficient curb cuts to allow ingress and egress, and reduction in size has not adversely affected maneuverability thereon, access is now restricted to a service road. Vehicles approaching from the east must travel past the subject property and proceed along a circuitous route of approximately 6/10ths of a mile before reaching the service road. Traffic moving in the opposite direction, which prior to the appropriation concededly had difficulty gaining access to the subject property because it had to cross an opposing stream of traffic, nevertheless, is now relegated to an inadequate and circuitous route.
The Assistant Attorney-General contends that since the subject property enjoys practically the same curb cuts as existed before the appropriation, access remains unchanged and unaffected. Access, however, is not merely those physical qualities of a parcel of land related to obtaining entry and exit from that property. Since the right of access means reasonable Ingres to and egress from abutting land as it relates to highest and be use, the way or means of approach is material to the court *1100 ultimate determination. .Where, as in the instant case, the means of approaching the subject property requires a circuitous route, which according to both appraisers is inadequate for the highest and best use of the subject property, consequential damages are compensable.
After due consideration of all the relevant evidence adduced at trial, together with an analysis of the quality of the appraisals and their respective comparables, the court opines the square-foot value of the subject property prior to the appropriation to be $6; after the taking the square foot value was $4.
The court finds that the fair and reasonable market value of the subject property before the taking was $96,100; that the fair and reasonable market value of the subject property after the taking was- $35,120, and that the amount by which the claimants have been damaged is $60,980; of this amount, $1,920 represents direct damage to the land and $1,500 represents direct damage to land improvements; $57,560 represents consequential damage to the remainder, of which $17,560 is severance damage to the land.
Claimants are entitled to an additional award of $1,660 for the value of the temporary easement. No damages have been awarded for the cost of demolition of the building.
The claimants are entitled to an award therefor together with appropriate interest.
Pursuant to statutory mandate the court has viewed the property.
The claimants are awarded the sum of $62,640 for all damages direct and consequential, with appropriate interest thereon from December 14, 1966 to June 14, 1967, and from December 11, 1968 to the date of entry of judgment herein.