STATE of Missouri ex rel. STATE HIGH-WAY COMMISSION of Missouri, (Plaintiff) Appellant,

v.

G. A. BROCKFELD et al., (Defendants) Respondents.

No. 31531.

St. Louis Court of Appeals. Missouri.

April 21, 1964.

Motion for Rehearing or for Transfer to Supreme Court Denied May 19, 1964.

Robert L. Hyder and Bruce A. Ring, Missouri State Highway Dept., Jefferson City, for appellant.

Alvin Juergensmeyer, Warrenton, Thomas W. Wehrle, and Walter Wehrle and Wehrle & Wehrle, Clayton, Wm. L. Hungate and Hungate & Grewach, Troy, for respondents George F. Mohr and Genevieve B. Mohr.

FRANK W. HAYES, Special Judge.

■ The respondents, George F. Mohr and Genevieve Mohr, filed a motion in this court to dismiss the appeal of the appellant for its failure to comply with Supreme Court Rule 83.05, V.A.M.R., requiring that "[t]he points relied on shall briefly and concisely state what actions or rulings of the Court are claimed to be erroneous and briefly and concisely state why it is contended the Court was wrong" in the

rulings. The motion was submitted with the appeal. After reviewing the record, the court is of the opinion that there is sufficient compliance with the Rule to require, in the interest of justice, the retention of the appeal. Respondents' motion to dismiss the appeal is, therefore, overruled.

This is condemnation proceedings brought by the State of Missouri at the relation of the State Highway Commission of Missouri to acquire the right of way for the construction and maintenance of Interstate Route 70 in Warren County, Missouri. The action was instituted on May 10, 1962. Thereafter, commissioners were duly appointed and on June 21, 1962, they filed their report awarding the respondents the sum of $15,000.00. Timely exceptions were filed by appellant and respondents George F. Mohr and Genevieve B. Mohr and upon a trial of the exceptions, the jury on October 30, 1962, returned its verdict in favor of respondents in the sum of $7000.00, and from the judgment entered thereon the appellant appeals.

The respondents Mohr owned a tract of land abutting the south side of existing Route 40 in Warren County, Missouri, about half way between Warrenton and Wright City. The tract had a frontage along Route 40 of approximately 313 feet, a depth along its east line of approximately 284 feet, and along its west line of approximately 200 feet with a width across the back of 300 feet. The tract of land was improved with a gasoline service station leased from respondents Mohr by the respondent Sinclair Refining Company, a corporation, and by it leased to respondents Sands. There were two (2) commercial type entrances from the property to Route 40, one at the east end and one at the west end of said property.

At this location Route 40 as it then existed was a dual lane highway with two concrete pavements. It ran in a generally east and west direction. The north lane was 18 feet in width and carried two lanes

of traffic westwardly. The south lane, upon which the Mohr property abutted, was 24 feet in width and carried two lanes of traffic eastwardly. Approximately opposite the western entrance from said property to Route 40 was a cross-over connecting the two pavements of Route 40 so that traffic on the west-bound lane could turn onto the east-bound lane by using the crossover, and vice versa. There is a county road running north and south located approximately 271 feet east of respondents' Mohr east property line.

In constructing Interstate 70 Highway, the appellant is appropriating a small tract of land, consisting of 0.05 acre. There are no improvements located on this small tract. The reconstruction of Interstate 70 will involve the construction of a new west-bound lane and resurfacing of the east-bound lane and the construction of two outer roadways, one being located on each side of the through lanes of Interstate 70. Both outer roadways will carry traffic in both directions while the north Interstate 70 pavement will carry traffic only in a western direction and the south Interstate 70 pavement will carry traffic only in an easterly direction. Both outer roadways will lead to interchanges at Warrenton and Wright City, Missouri, each being about three (3) miles from property in question. The respondents have free access to the south outer roadway which leads to Warrenton and Wright City, Missouri. At each interchange traffic on outer roadways can enter onto Interstate 70 and traffic from that highway can enter onto the outer roadways. The county road east of the Mohr property will be carried up and over Interstate 70 and there will be no interchange at the point where the county road crosses Interstate 70.

Before the improvements described herein, respondents Mohr had direct access from their property to existing Route 40 in two (2) places, one at the west end and the other at the east end of their property. By the new construction, this direct access to Route 40 is destroyed because of

the construction of the outer roadway between the south lane of Route 40 and the property of respondents Mohr. While respondents Mohr had access to the outer roadway, they could not go across the outer roadway and enter what was old Route 40. But said respondents could, by traveling the outer roadway, finally have access to old Route 40. The sole question presented here is whether respondents Mohr had a property right in the easement of direct egress and ingress on pre-existing Route 40 which, when taken in condemnation, entitles them to compensatory damages. The trial court ruled that such loss of access to existing Route 40 was an element of damage to be considered by the jury in assessing said respondents' damages. Did the trial court err in so ruling? The answer to that question will rule the various assignments of error made by the appellant.

The appellant assigns as error the refusal to give its offered Instruction No. 6, which reads as follows:

"The Court instructs the jury that if you find from the evidence in this case that after the appropriation of a part of defendants' property and the reconstruction of Route 70, the defendants will have an unlimited right of access to an outer roadway of Route 70, then you shall not award to the defendants, nor allow to them any amount of money because of the fact that there is no direct access between defendants' remaining property and the through ways of Route 70."

It also assigns as error the giving of Respondents' Mohr Instruction No. 3, which reads as follows:

"The Court instructs the jury that in determining just compensation to be paid to the defendants for the appropriation of their property by the plaintiff, as described in the evidence, you may take into consideration the damages, if any, resulting to the remainder of defendants' whole tract of land by reason of the taking of defendants' rights of access to U. S. Highway 40, existing on June 21, 1962, and by the construction of the limited access highway as described in evidence."

There was evidence in the record to support the giving of Instruction No. 3, above, because witnesses for respondents Mohr testified that the loss of access to existing Route 40 caused by the new construction was an element of damage considered by each of them in fixing said respondents' damages. Appellant objected to this line of testimony, sometimes belatedly, all of which were overruled, and made motions to strike, sometimes untimely, all of which were overruled. Whether the trial court erred in admitting such testimony will be determined by the answer to the main question involved herein.

Here we are concerned with two classes of highways, the "limited access highway" and the "land service road." The "limited access highway" is of comparatively recent origin in Missouri, being first authorized in our 1945 Constitution, Article IV, Section 29, V.A.M.S. Like its name signifies, there is no direct access to the throughway except at certain well spaced entrances and exits connecting outer roadways and intersecting highways. The usual direct access is allowed between the outer roadways and abutting property but no abutting owner shall have the right of direct access to said highway or its right of way. Directly means in a direct manner and without anything intervening. The very term, limited-access highway, conveys the idea that ingress and egress to the main traveled portion of the throughway has been circumscribed and restricted. Even if an outer roadway and ramp are close at hand, their course and place of entrance may be roundabout and burdensome to abutting property owner. As in the case at bar, the respondent had a choice of going three miles east to the interchange at Wright City or three miles west to the interchange at Warrenton before entering old 40.

The previously existing U. S. 40 was a "land service road," which is the term used to describe the ordinary highway which is intended primarily to enable abutting landowners to have access to the outside world as distinguished from the "limited access road," which is a "traffic-service road" designed primarily to move through traffic. 43 A.L.R.2d 1074. In the instant case, U. S. 40 had been used as a "land service road" for many years and the respondents had an easement of access, that is egress and ingress, from their service station property to said highway for many years. In the construction of Interstate 70, a "limited access highway," the appellants sought to appropriate a portion of respondents' real estate and to cut off and extinguish respondents' right of easement to U. S. 40. As we understand the record, respondents are not claiming damages because they will not have direct access to Interstate 70 when completed. They do not claim they have any such right of access. Nor do they deny that the appellant has the right, in a proper proceedings, to destroy or impair their right of access to existing Highway 40. But they do contend that they had an easement of access to pre-existing U. S. 40 and that it was a property right which could not be taken from them by condemnation without just compensation.

■ The abutting owners of land have an easement of access, that is, egress and ingress, from their property to the existing highway, which constitutes a property right, an interest in land which cannot be taken by condemnation without compensation. State ex rel. State Highway Commission v. James, 356 Mo. 1161, 205 S.W.2d 534; Christy v. Chicago, B. & Q. Railroad Company, 240 Mo.App. 632, 212 S.W.2d 476; Filger v. State Highway Commission, Mo.App., 355 S.W.2d 425, 431; State ex rel. State Highway Commission v. Vorhof-Duenke Co., Mo., 366 S.W.2d 329, 335; State ex rel. State Highway Commission v. Green, Mo., 305 S.W.2d 688, 691; Smith v. State Highway Commission, 185 Kan. 445, 346 P.2d 259; McMoran v. State, 55 Wash.2d 37, 345 P.2d 598; Mueller v. New Jersey Highway Authority, 59 N.J.Super. 583, 158 A.2d 343; State ex rel. Ashworth v. State Road Commission, 128 S.E.2d 471 (W.Va.); Mississippi State Highway Comm. v. Finch, 237 Miss. 314, 114 So.2d 673; State, By and Through State Highway Commission v. Burk, 200 Or. 211, 265 P.2d 783; In re Appropriation of Easement for Highway Purposes, 93 Ohio App. 179, 112 N.E.2d 411; 43 A.L.R.2d 1072, 1074; A.L.R. (2) Supp. 1962, p. 952.

That the above statement of law is supported by the great weight of authority is recognized by our Supreme Court in State ex rel. State Highway Comm. v. Vorhof-Duenke Company, supra, where Judge Storckman, speaking for the court, says, l. c. 335 of 366 S.W.2d:

"Limiting access to public highways is of comparatively recent origin. The power to do so first appeared in our 1945 Constitution. 'Abutting owner's right to damages or other relief for loss of access because of limited-access highway or street' is the subject of an annotation in 43 A.L.R.2d 1072, and this statement supported by the great weight of authority appears at page 1074, § 3: 'Where an established "land service road," in which the normal right of access had already come into being, is converted into a limited-access way in such a manner that the existing rights of access are destroyed, the owners of such rights are entitled to compensation, exactly as they would be if such rights were destroyed by any other type of construction'. For later cases on the subject of this annotation, see A.L.R.2d Supplement Service, 1960 Issue, p. 2954, supplementing the annotations in A.L.R.2d Volumes 20–68; and A.L.R.2d Supplement Service 1962 Issue, p. 952, covering A.L.R. 2d Volumes 1–80. In accord is the Missouri case of State ex rel. State Highway Commission v. James, 356 Mo. 1161, 205 S.W.2d 534, 537 [7, 8].

In addition to Mr. Wilkie Cunnyingham's dissertation, supra, there are articles in 27 Washington Law Review, p. 111, and 3 Stanford Law Review, p. 298, on the subject of limiting access to and egress from public highways."

But appellant contends that abutter's right of access on pre-existing highway does not include the right to have the highway forever maintained past his property in the manner in which it was originally constructed and cites some Missouri cases. An examination of these cases discloses that the factual situation is different from that in the instant case. In Filger v. State Highway Commission, Mo. App., 355 S.W.2d 425 (K.C.App.), the Highway Commission constructed *islands on its own right of way* which diminished abutting owner's direct access from 163 feet to 47½ feet which did not materially block entrance or exit and the court held abutting owner was not entitled to damages. In Hill-Behan Lumber Company v. State Highway Commission, 347 Mo. 671, 148 S.W.2d 499, the Commission *changed the grade* within confines of the right of way to inconvenience of abutting owner and the court held, absence statute, no damages were authorized. In Handlan-Buck Company v. State Highway Commission, Mo., 315 S.W.2d 219, it was held that where *owner's property was not located adjacent to street* which was being converted into limited-access highway, owners had no easement of access. In Christy v. Chicago, B. & Q. Railroad Company, 240 Mo.App. 632, 212 S.W.2d 476, the plaintiff's *land did not abut* upon that part of street involved. In none of the above or other cases cited by appellant was land *actually taken* from abutting owners' tract by condemnation and his right of access also destroyed. We do not consider above cases controlling here. The respondents herein do not deny that appellant has the right to change the highway from its original construction. They simply contend that when appellant, in changing the highway by condemnation,

appropriates some of their land and destroys and impairs their right of access on existing U. S. Highway 40, that they are entitled to compensation therefor.

Appellant also contends that, even though respondents had an easement of access from and to their property on existing Old 40 Highway and such access was destroyed by construction of Interstate 70, respondents cannot recover damages herein *for loss of access* because of the construction of an *outer road,* to which they have access, which will lead them to the interstate system. The outer road referred to gives respondents a choice of going east three miles to Wright City interchange, or going west three miles to Warrenton interchange. But regardless of where the outer road leads, it does not change the fact that prior to the new construction the respondents had an easement of access, which was a property right, to then existing Old 40 Highway. This right of access was destroyed before the construction of the outer road. That right is gone forever. The construction of the outer road did not restore the property right of access to Old 40 Highway. It did provide another way to get onto the highway system. But certainly no one would seriously contend that the service station property of respondents, with easement of access to then existing 40 Highway, was not damaged by destruction of that easement simply because of the construction of an outer road which connects said property with the general highway system. What was once a valuable commercial site, due partly to the existing easement, has lost its value as commercial property and may now have value only as residential or farm property. The kind and extent of access or lack of it is always considered by a man of ordinary prudence in deciding whether or not he will purchase residential, commercial, or rural real estate. The construction of the outer road may well be taken into consideration by the triers of the fact in *mitigation of damages* and as to the extent that respondents are damaged but it is *not a defense* to the destruction of

respondents' easement of access to Old 40 Highway. If Old 40 Highway had become the outer road, then respondents would not be damaged by loss of access for the reason that their access would not be disturbed. But such is not the case here.

In State of Arizona ex rel. Morrison, Atty. General v. Thelberg, 87 Ariz. 318, 350 P.2d 988, a condemnation proceedings was brought to condemn defendant's land for a controlled-access highway. A *frontage road* was constructed parallel to the controlled-access highway which afforded access thereto a distance of 1400 feet from defendant's property. In discussing the measure of damages, the court says, 1. c. 992 of 350 P.2d:

"[4] When the controlled-access highway is constructed upon the right of way of the conventional highway and the owner's ingress and egress to abutting property has been destroyed or substantially impaired, he may recover damages therefor. The damages may be merely nominal or they may be severe. Other means of access such as frontage roads as in the instant case may be taken into consideration in determining the amount which would be just under the circumstances. Knox County v. Lemarr, 20 Tenn.App. 258, 97 S.W.2d 659. Other means of access may mitigate damages, State v. Ward, 41 Wash.2d 794, 252 P.2d 279, but does not constitute a defense to the action however. Golden v. Louisville & N. R. Co., 228 Ky. 134, 14 S.W.2d 379".

In State v. Ward et ux., 41 Wash.2d 794, 252 P.2d 279, there was a condemnation proceeding in which the question arose as to whether the plans showing a service road were admissible. The court says, 1. c. 280 of 252 P.2d:

"[1] Not only is some of appellants' land taken, but their right of access to the highway from the remaining lands is also being condemned. Lack of access, of course, has a bearing upon the extent of the damage done to the remainder of the land, as well as upon the diminution of special benefits which ordinarily accrue to abutting land from the right to use the highway. The limited access feature of the highway must, therefore, be presented to the jury together with all other features of the proposed construction such as service roads, to enable it to properly assess all the elements of damage and special benefit that will result therefrom.

\*       \*       \*       \*       \*       \*

"[2] There is no such question of substitution in the instant case. This is readily apparent when we realize that access to the land on the west side of the highway was not over any highway or road. Indeed, the road which served the entire farm did not lead from the buildings to the land in question. Nor is it contended by the state that the service road will give access between the two parcels of appellants' property. It is, therefore, not a substitute for severance damages. Without the service road, however, the land in question would be landlocked and practically valueless. Thus, the service road avoids the damage which a lack of access would cause. This is mitigation, not substitution.

"The amount of damage which the entire project will do to appellants' land on the west side of the highway depends upon whether or not there will be a service road. The plan for it was therefore admissible in evidence for the guidance of the jury".

In People v. Ricciardi, et al., 23 Cal.2d 390, 144 P.2d 799, the purpose of the condemnation was to acquire land for an underpass. Service roads furnished property owners only a circuitous means of access to highway. The court held that whether owners possessed a right which had been damaged was for the trial court, but how much the service road would mitigate the

damage was for the jury, saying, l. c. 806 of 144 P.2d:

"* * * This evidence was before the court at the close of defendants' case at which time the ruling was made permitting the expert witnesses to testify to the effect upon the market value of the property not taken by reason of the contemplated improvement and the consequent requirement that the owner must thereafter take another route to reach the through traffic lane which before the improvement was immediately in front of his premises. To sustain the plaintiff's position would require a ruling by this court to the effect that although a landowner's easement of access has been substantially impaired, under no circumstances should circuity of travel occasioned thereby enter into a computation of the damages to be awarded. Such a ruling obviously would be beyond the bounds of propriety. Certainly the plaintiff would not contend that if the underpass be constructed as proposed and no means of access to Rosemead Boulevard be provided for, the defendants would be without redress. It is too plain to admit of argument that if the underpass be constructed as proposed and the service roads were not provided for in the contemplated improvement, the defendants' right of access to Rosemead Boulevard would be practically destroyed. *In providing for the service roads the state must be deemed to have proceeded in frank recognition of the private right of access possessed by the defendants, that such right would be invaded, and intended by means of those service roads to minimize and entirely absorb the damages to which the defendants would otherwise be entitled.* (Emphasis ours.) But in any event the question whether the defendants possessed a right which was damaged was for the trial court to determine. As to how much the service roads would mitigate the damage, i. e., how much would be the net damage, was a question of fact for the jury. See Knox County v. LeMarr, 20 Tenn.App. 258, 97 S.W.2d 659, 661".

In Grand River Dam Authority v. Misenhimer, et al., 195 Okl. 682, 161 P.2d 757, l. c. 758, the court says:

"The controversy in this case arises out of the closing of U. S. Highway No. 60 at two points, one a little less than a quarter of a mile to the west of plaintiffs' property and the other about a quarter of a mile to the east and a little south of said property, by inundation caused by the closing of the dam belonging to defendant. The said highway runs along the south side of plaintiffs' property. *The principal question for determination is whether in a case of this kind the owner of property abutting on the highway has a cause of action for damages against the Grand River Dam Authority when another roadway has been opened by the county which ordinarily affords a means of ingress and egress*". (Emphasis ours.)

At l. c. 761, of 161 P.2d, the court further says:

"[3–5] An owner must show that some right or interest which he enjoys in connection with the property, which is not shared with or enjoyed by the public, is affected to entitle him to damages. The test is, has he suffered a special injury different in kind from that suffered by the public in general? The owner of property has a special interest in the roadway or street upon which his property abuts different from the general public. He has the right to adequate access to his land on the highway from either direction and whenever that right is cut off or materially impaired by an obstruction in the highway he suffers an injury different in kind, not merely in degree, from that suffered by the public in general.

If the highway upon which his property * * * is placed in a pocket or cul-de-sac, he suffers a special injury and may recover damages even though he has access thereto by a more inconvenient circuitous route. We think this expresses the better view as well as the rule to which we are committed in this jurisdiction."

In Oklahoma Turnpike Authority v. Chandler, Okl., 316 P.2d 828, l. c. 832, the Supreme Court of Oklahoma approved the doctrine announced in Misenhimer case, supra, saying:

"In view of our consistent adherence to the rule we are not constrained to re-evaluate such pronouncement upon the basis, suggested by defendant, that compensation for damages for diminution in value must be considered by weighing relative interests of the public and the individual, to the end that government will not be unduly burdened in the exercise of what may be determined as most compatible for the public welfare.

"Defendant also urges, as part of the first proposition, that it was prejudiced by the court's refusal to instruct the jury that any judgment for plaintiffs had to be based upon a determination that any damage suffered was special and peculiar to plaintiffs, and different from that suffered by the general public, *and thereby precluded the jury from considering whether plaintiffs still had a convenient means of egress and ingress identical with that used by the community* in general. (Emphasis ours.)

"The jury was instructed that if the evidence showed construction of the Turnpike placed plaintiffs' property on a dead end road, materially impaired their right to use the road as it formerly existed and thereby caused them damage, their verdict should be for plaintiffs. Such instruction conformed to the rule announced in the Misen-

himer and Terminal Oil Mill cases, supra. *Moreover, the jury was instructed that it might consider whether plaintiffs had been provided with a better or worse outlet than they had before the road was closed."* (Emphasis ours.)

In Clayton County v. Billups Eastern Petroleum Company, 104 Ga.App. 778, 123 S.E.2d 187, l. c. 189, the court says:

"The sole question here is whether a cause of action is stated for damage to property by a petition alleging facts sufficient to authorize a jury to find substantial impairment of an owner's right of ingress and egress directly to and from the highway where, as in this case, the highway is converted from an unlimited to a limited access road *and there is provided at the time of the change a service road by which the plaintiff's property can be reached.* Is such damage to be held to be compensable as a damaging of private property within the meaning of the constitutional provision in Art. I, Sec. III, Par. I (Code Ann. § 2–301), providing in part that private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid?" (Emphasis ours.)

The court further says, l. c. 190 of 123 S.E.2d:

*"The defendant contends that the easement of access theory is not realistic as applied to a four-lane express highway, as modern expressways are designed and constructed to move traffic in volume and are not planned, designed, constructed, or maintained to furnish business to establishments contiguous to them. This argument, however, is totally inapplicable under the facts as alleged in the present petition where the plaintiff had enjoyed practically unlimited ingress and egress for almost seven years before the highway was changed from an unlimited*

*to a limited access one.* Obviously, a different question would have been presented had the plaintiff located his business adjacent to an existing limited access road. *Here, a right the plaintiff had enjoyed for almost seven years was allegedly substantially damaged.* Neither our case law nor the constitutional provision makes any distinction as to the class of road involved. The prohibition is against the taking or damaging of private property for public purposes without just compensation.

"*Other jurisdictions have allowed compensation for impairment of the right of access even though there is available a means of indirect access, whether from other existing streets or by construction of service or feeder roads.* See 43 A.L.R.2d 1077(4)." (Emphases ours.)

In Nichols et al. v. Commonwealth, 331 Mass. 581, 121 N.E.2d 56, 1. c. 57, the Supreme Court of Massachusetts says:

"Before the taking the petitioners were the owners of a parcel of land which comprised approximately 6 acres with a frontage of approximately 410 feet on the turnpike to which the petitioners had unlimited direct access. The land taken comprised about .37 of an acre on the front of this parcel bordering on the turnpike. Before the taking the entire parcel was used for residential purposes but it was zoned so that use for commercial purposes was permitted for a depth of 200 feet from the turnpike.

"*There was evidence that the petitioners had indirect access to the new highway by way of Preston Street, which bounded that part of the land which remained after the taking, but such indirect access was by a difficult route.*" (Emphasis ours.)

The court held that in proceeding upon petition for damages allegedly sustained in taking petitioners' land for highway purposes, evidence which bore upon impairment of and injury to petitioners' former access to public way was erroneously excluded even though there was evidence that petitioners had indirect access to the new highway.

We do not find that the precise question of the effect of the building of an outer roadway has upon the right of an abutting landowner to collect compensation, when a portion of his land abutting an existing highway is condemned and his direct access to said highway has been impaired, has ever been decided by the courts of this state. The appellant cites some cases from foreign jurisdictions to the effect that the building of an outer roadway under such circumstances is a defense to the destruction or impairment of abutting owners direct access, but no Missouri cases. We are of the opinion, however, that the sounder rule is that the building of the outer roadway as aforesaid only goes to the mitigation of damages which such abutting owner may suffer as so decided in cases cited above. Regardless of the rule elsewhere, in Missouri it is the law that the abutting owner's right of access to an existing highway is a property right which, when taken by condemnation along with a parcel of land, entitles him to just compensation. The appellant ordinarily builds an outer roadway so that the abutting owner's property will not be *landlocked* and thereby to reduce said owner's damages due to the destruction of his direct access, and the jury may consider such fact, among others, in determining the amount of compensation due said owner. The existence of the outer roadway, therefore, is to be considered only in mitigation of damages unless, perchance, the benefits of the outer roadway equal the damages resulting from loss of access, in which event the jury might conclude the landowner suffered no damage from loss of access. But the extent the building of an outer roadway reduces the abutting landowner's damages from loss of direct access is a jury question and it cannot be said that the building of an outer

roadway is, as a matter of law, a complete defense as contended by appellant.

 The measure of damages for the destruction or impairment of access to the highway upon which the property of an owner abuts is the difference between the market value of the abutting property immediately before and immediately after the destruction or impairment thereof. The damages awarded abutting landowner for destruction or impairment of access therefore is based, not upon the value of the right of access to the highway, but rather upon the difference in value of the remaining property before and after access thereto has been destroyed or impaired. This in turn is based upon the highest and best use to which the land involved is best suited before and after the right of access is molested. (State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 350 P.2d 988, 992). Loss of the easement of access, and the construction of an outer roadway, therefore, are elements which the jury may consider in determining the abutting landowner's compensation in a condemnation suit.

The court is of the opinion that:

1. The trial court did not err in permitting respondents' witnesses to testify that they took into consideration the element of loss of access in arriving at the amount of compensation to be paid the respondents.

2. The trial court did not err in giving Instruction No. 3 for respondents which permitted the jury to consider the taking of respondents' right of access to existing U. S. Highway 40 in determining the damages, if any, resulting to the remainder of respondents' whole tract of land. The instruction properly declares the law and is supported by the evidence.

3. The court did not err in refusing to give Instruction No. 6 on behalf of appellant. This instruction does not properly declare the law and is not supported by the evidence. Respondents did not in the trial court claim that they had any right of access

to the through way of Route 70. Nor claim damages from the lack of it. They claimed damages for destruction of their right of access to existing old Highway 40 as affecting their land. The instruction also told the jury that if respondents had unlimited access to an outer roadway, then they should not allow respondents any amount of money. In other words, this instruction told the jury that access to the outer roadway was, as a matter of law, a defense to respondents' loss of access. This is not the law. Appellant should have submitted to jury that the unlimited right of access to the outer roadway was an element to be considered in mitigation of respondents' damages because of loss of access to old Highway 40.

We do not find any error in the trial of this case and judgment herein is affirmed.

RUDDY, P. J., and WOLFE, J., concur.

ANDERSON, J., not participating.