Froessel, J.
The Court of Claims has awarded claimant $40,000 with interest in full settlement of her claim for alleged damages to her real property, as a result of the construction *37 in the center of former Central Park Avenue, Yonkers, of a portion of the New York Thruway. The Appellate Division has unanimously affirmed.
Claimant’s property, consisting of approximately 8 acres, is situated on the west side of Central Park Avenue, about halfway between Yonkers Avenue on the north and McLean Avenue on the south. The property has a frontage of 155 feet on Central Park Avenue, and is bounded by Midland Terrace on the north and St. John’s Avenue on the west, which avenue describes an arc and runs into Central Park Avenue near the irregular southern boundary of the property. Claimant’s property is improved with a taxpayer containing 4 stores on the Central Park Avenue frontage, a group of garage buildings for housing tenants’ automobiles, and 10 buildings containing 174 apartments.
Prior to July 12, 1954, at which time construction of the Southern Westchester Connection of the New York Thruway, Hudson Section, in, upon or over Central Park Avenue, was begun, that avenue was a public street 100 feet wide, and a main artery of travel from New York City through Westchester County. At that time, Central Park Avenue crossed McLean and Yonkers Avenues at the same grade and level.
Construction of the Thruway was finished on February 18, 1957. As a result of the construction, the center portion of Central Park Avenue—which became the Thruway—was higher in some places and lower in others than the original grade of the street. The roadway was depressed so that it presently passes under McLean and Yonkers Avenues, and was elevated to a height of about 6% to 11 feet directly opposite claimant’s property. In addition, there is a retaining wall extending approximately 3 feet above the new roadway opposite claimant’s property.
The center portion of the Thruway is a limited-access highway, and it is no longer possible to cross from the east side of Central Park Avenue directly to claimant’s property. On each side of the Thruway, however, there are service roads. Central Park Avenue South is a service road for southbound traffic, about 27 feet wide, upon which claimant’s property abuts. On the east side of the Thruway is another service road, Central Park Avenue North, for northbound traffic.
*38 Vehicles traveling north on Central Park Avenue no longer have direct access to claimant’s property, but must use the service road on the east side of the Thruway and cross over at Yonkers Avenue about 10 blocks north of claimant’s property, or at McLean Avenue about 8 blocks to the south of it. In addition to these two cross streets, there is a pedestrian overpass at Clark Street, about 7 blocks north of claimant’s property.
Claimant bases her claim on the construction and the resulting “ change of the grade and the interference with the ingress, egress, access, light and air to the portions of the property ’ ’.* No claim is made for change of grade to the street (Central Park Avenue South) immediately adjacent to her property — which concededly remained at grade. No part of claimant’s property, nor any interest therein, was appropriated, used or occupied for purposes of the Thruway construction, and no such claim is made.
The statutory basis for the claim is subdivision 14 of section 347 of the Highway Law, which provides, as applicable: “If the work of constructing, reconstructing and maintaining such state thruways and bridges thereon causes damage to property not acquired as above provided, the state shall be liable therefor, but tins provision shall not be deemed to create any liability not already existing by statute.” (Emphasis supplied.)
The pre-existing statutory liability referred to in subdivision 14 of section 347 of the Highway Law is found in section 99 of the Second Class Cities Law, which law is applicable to the City of Yonkers, and provides: “ The grade of any street shall not be fixed or established except by direction of the common council. The grade of a street heretofore or hereafter legally established shall not be changed, except by direction of the common council, and except also upon compensation for damages done, to be ascertained in and by the proceedings provided by law for ascertaining damages for lands taken for the opening of streets.”
*39 This section would, therefore, have imposed liability upon the city had it undertaken the construction and thereby damaged claimant, if there were a change of grade. Since the alteration was made by the State, however, section 347 charges it with the liability for any such damage to abutting property owners (see Mirro v. State of New York, 260 App. Div. 525, affd. 285 N. Y. 678).
Appellant’s principal contention is that, since claimant was not deprived of access to and egress from her property, the courts below improperly based the award on circuity of access and diversion of traffic in their determination of the consequential damages. Appellant submits that, therefore, the decision of the Appellate Division is contrary to the law of this State.
It has long been the rule in this State that consequential damages may not be recovered by an abutting property owner for the diminution in value of his property because the State, in changing the course of an adjoining highway, interferes with the access to his land or diverts traffic therefrom. Damages resulting merely from circuity of access are considered as damnum absque injuria (McHale v. State of New York, 278 App. Div. 886, affd. 304 N. Y. 674; Van Aken v. State of New York, 261 N. Y. 360, 362-363; Cofey v. State of New York, 291 N. Y. 494, 498-499). To be compensable, the damages must be the direct result of a change in grade (Hall & McChesney v. State of New York, 15 Misc 2d 748, affd. 11 A D 2d 899, motion for leave to appeal den. 8 N Y 2d 710; Buro v. State of New York, 281 App. Div. 61, affd. 306 N. Y. 730; Nettleton Co. v. State of New York, 11 A D 2d 899).
In Hall & McChesney v. State of New York (supra), a factually similar case, claimant’s property located in Syracuse fronted on Oswego Boulevard on the east, Court Street on the north, and North Clinton Street on the west. Oswego Boulevard was a very heavily travelled street, thus making claimant’s property best suited for retail and office purposes. After reconstruction, OsAvego Boulevard became a limited-access, divided, depressed highway with ramps, separated from claimant’s property by a 32-foot service road. The service road was constructed at grade with claimant’s property. Claimant’s property was still left Avit.h the same access on the north and west. In addition *40 to compensation for the actual strip of property taken, claimant sought an award for consequential damages for loss of value of its remaining unappropriated property, the best use of which was now industrial.
The court, after noting that claimant still had access on the three sides, stated (15 Misc 2d, at p. 751):
“ The only change was that access on the east instead of being from a heavily traveled main artery was now from a 32-foot street which did not have the physical capacity for the volume of traffic carried on the street which previously abutted claimant’s property. Instead, that heavy volume of traffic will now be carried * * * to the east of claimant’s property and depressed some 14 or 15 feet below claimant’s property. * * *
“ The claimants had no property or other vested right in the continuance of a heavy traffic flow over the street abutting claimant’s land and a change in the reasonably anticipated flow of traffic will not give rise to any damages to be assessed against the State so long as the abutting owner is not deprived of reasonable ingress and egress.”
In Buro v. State of New York (supra) an elevated highway was constructed in the middle of Atlantic Avenue, Brooklyn, the walls of which rose 8 to 17 feet above street' level. The sidewalks were narrowed as much as 11 feet, and the new structure closed former street crossings. We expressly held, by a unanimous court, that this did not constitute a change of grade. McHale v. State of New York (supra) held that it was improper to consider diminution in the market value of the unappropriated portion of claimant’s property as the result of a semi-clover leaf construction and consequent diversion of traffic from claimant’s tavern, which no longer faced on the main thoroughfare.
In the Van Aken case (supra), because of the elimination of a railroad crossing, the owner had to travel more than half a mile to get from one side of his farm to the other. As Judge Desmond correctly pointed out in Coffey v. State of New York (291 N. Y. 494, 498-499, supra), when he cited with approval the Van Aken case, “ there could be no compensation allowed for inconvenience resulting from impaired access to the road ”, despite the fact that because of a mere 4-foot sidewalk access we noted (p. 496) that the rental value of claimant’s stores and apartments “ was practically destroyed ”. Moreover, we stated *41 (p. 499) that a distinction must “ carefully [be] made between such consequential damage and recoverable damage for the actual taking of physical property or the direct impairment of easements. * * * ‘ any (consequential) damage which respondents may have suffered is damnum absque injuria.’ ”
And so in the Nettleton case (supra) the Appellate Division unanimously reversed a judgment of the Court of Claims, where it appeared that the Trial Judge awarded a large amount for consequential damages because there was no longer immediate access to claimant’s property from the boulevard, the grade of which had been depressed, and because of the consequent diversion of traffic. There was no complete destruction of access, however, since claimant’s property had access to the new service road and to a street forming the rear boundary of the property.
In the case at bar, respondent had free and uninterrupted access to Central Park Avenue South, 27 feet wide, which concededly remained at grade, as well as to Midland Terrace and St. John’s Avenue. Under the authorities, then, there was no change of grade as to her property, and claimant had no right, vested or otherwise, to abut upon a 100-foot-wide highway, nor to the continued passage of a heavy volume of traffic.
In an attempt to afford claimant relief here, the Chief Judge now would abandon the well-established rule and treat the change of grade damages and the loss of access damages as one and the same. In his view, the award may be sustained on the ground that the loss in value of the property resulted directly from the change in grade. Our former decisions definitely and unquestionably hold to the contrary, and, as we said in Coffey v. State of New York (supra, p. 497), while this may “ 1 appear to be at variance with natural justice ’ ”, our reversal “ 1 rests upon the soundest legal reasons ’ ”.
The conclusion therefore seems inescapable that the courts below based their award on the consequential damage resulting from the circuity of access and diversion of traffic. This being so, their result is clearly in conflict with well-established authority, and may not stand.
Accordingly, the judgment appealed from should be reversed and the claim dismissed, without costs.

No evidence was adduced with respect to the claimed interference with light and air. Furthermore, this is not a case where claimant had easements of light and air such as in the ease of the erection of an elevated railroad by or for a private corporation. No such easements exist where there is a public use of the streets (Sauer v. City of New York, 180 N. Y. 27, affd. 206 U. S. 536).