**J. Y. HOLBROOK et al., Appellants,**

v.

**The STATE of Texas, Appellee.**

No. 3628.

Court of Civil Appeals of Texas.

Eastland.

March 9, 1962.

Rehearing Denied March 30, 1962.

Park Street, San Antonio, for appellants.

Will Wilson, Atty. Gen., Raymond W. Weber, Elmer McVey, Joseph G. Rollins, Asst. Attys. Gen., for appellee.

COLLINGS, Justice.

The State of Texas brought suit seeking to condemn for highway purposes an approximately two acre strip of land owned by J. Y. Holbrook and other defendants. The strip condemned was the front portion of an 82 acre tract fronting on pre-existing Loop 13, also known as the W. W. White road in Bexar County.

A hearing was had before special commissioners appointed by the court and the sum of $9,500.00 was awarded as damages. Defendants withdrew the sum of the award which had been deposited with the court and timely filed their objections thereto. Upon a jury trial in the County Court it was found that the value of the land at the time of the taking was $8,587.70, and that the value of defendants' remaining land was the same before and after the taking. Based upon the verdict judgment was entered vesting fee simple title in the State of Texas to the land sought to be condemned and ordering the defendants to pay to the State the sum of $912.30, which was the difference between the damages found by the jury and the award of the special commissioners. J. Y. Holbrook and other defendants have appealed. It was stipulated that all proceedings up to the time of the trial were regular and that the matter was properly before the County Court. It was further stipulated

that the State of Texas had the right to condemn the land.

Prior to the taking of the two acre strip appellants were owners of the un-improved eighty-two acre tract East of Loop 13, with substantial frontage thereon. At that time appellants' property directly abutted on a graveled highway separated from the main traveled portion of Loop 13 by a vacant strip of grass. The right of way of both Loop 13 and the graveled frontage road was already owned by the State of Texas. The purpose in con-demning the land was to reconstruct Loop 13 including the graveled frontage road into a "controlled access" highway, con-sisting of four roadways, separated from each other by median strips, the two outer roadways to be frontage roads on to which the public in general, including appellants, would have direct access from abutting property, in the same manner that they had to the gravel frontage road on Loop 13 prior to the condemnation. It was proposed that the two inner roadways would be one way express roadways and access to and from the frontage roads was to be afforded by entrance and exit ramps so spaced as to afford protection and safety to the traveling public. Prior to the condemnation appellants' property fronted directly upon the gravel access road, which was a part of the right of way for Loop 13. Only a few feet sepa-rated appellants' land from the paved and main traveled part of the highway. It was then physically possible to drive from appellants' property across the graveled frontage road, over the grass strip, and onto the main traveled roadway of Loop 13. Under the proposed reconstruction, it would still be physically possible to so cross onto the main traveled portion of the expressway, but according to the plans no access is to be permitted to or from the two inner roadways except at certain designated points. The basis of appel-lants' complaint and claim for damages is that they will be denied the right to cut the frontage road curb which would permit them to obtain direct access to the main highway. Under the proposed plan access to the highway from appellants' property, after completion, will be to enter the one-way Northbound service road and continue to the Eisenhower road inter-change, a distance of 3,000 feet. A trav-eler desiring to go South will then be required to re-travel this distance by turn-ing across the Eisenhower road interchange and following the Southbound access road to an entrance ramp to the Southbound high speed lane.

Question No. 3 of the court's charge inquired of the jury concerning the market value of the remainder of defendants' tract of land immediately after the taking of the 2 acre tract condemned for highway purposes. In connection with such ques-tion the court instructed the jury in sub-stance, as follows:

"In answering Question No. 3 above, you will exclude increase in value, if any, and decrease in value, if any by reason of benefits or injuries re-ceived by defendants in common with the community generally and not pe-culiar to them and connected with their ownership, use and enjoyment of the particular tract of land from which the tract of land has been condemned, and taking into consideration the uses to which the tract condemned is to be subjected.—You shall not consider for any purpose benefits, if any, or in-juries, if any, sustained or received by defendants' remaining property arising from or due to traffic regulation by the State or City of San Antonio on the highway involved in this suit.

—You shall not consider for any pur-pose the temporary inconvenience, if any, or damages, if any, which may or might be suffered by the defendants during the construction period.—You shall not consider for any purpose benefits, if any, or injuries, if any, sustained or received by defendants' remaining property arising from or due

to any additional circuity of travel that results to a vehicle moving between any other point and defendants' remaining property by reason of the reconstruction of the present highway into a controlled access highway with frontage roadways providing ingress and egress to and from said highway and defendants' remaining property."

Appellants present points in which it is contended that the court erred (1) in overruling their objections to the instructions submitted in connection with Question #3, advising the jury that they should not consider any damage to appellants' remaining property arising from damage to the access to such remaining property, (2) in refusing appellants requested special instructions to the effect that the jury could consider benefits or injuries to their property occasioned by the effect upon the access to such property on account of the reconstruction of the highway into a controlled access highway, (3) in striking testimony to the effect that the remainder of defendants' property would depreciate in value because of the difficulty in getting to such property after the construction of the controlled access highway, (4) in repeatedly instructing the jury during the testimony of appellants' expert witnesses that the jury should not consider any difficulty in travel occasioned by circuitous routes to appellants' remaining property resulting from the installation and construction of the controlled access highway and (5) in instructing the jury not to consider benefits or injuries, if any, to defendants remaining property due to traffic regulations of the State or City of San Antonio. These points are overruled.

The basic questions here presented are determined by the holding in Pennysavers Oil Company v. State, Tex. Civ.App., 334 S.W.2d 546 (Error Ref.). Appellants have not been deprived of access to the highway upon which their property abuts. They have access to the highway system by use of an access road.

Their right to access to the highway is satisfied by and is limited to such an access as is here provided. Actually, prior to this condemnation proceeding appellants' property was already on the gravel frontage or access road to Loop 13. Since the condemnation, it is still to be on an access road. The only difference is that Loop 13 is changed to a controlled access highway, and a narrow strip is taken from appellants' land to permit the construction of the proposed highway system, including a rearrangement of the access road. By virtue of Article 6674w Vernon's Ann.Tex. Civ.St., the State Highway Commission is authorized to construct and maintain controlled access highways. The rule in such cases is stated by Chief Justice Murray in the Pennysavers case, as follows: "The State has the right under the provisions of Art. 6674w, supra, and its police power, to provide for one-way traffic, no U turns, division barriers, no left or right turns, traffic lanes, speeding and parking regulations, circuitous routes; for the changing of highways generally, and is not responsible for loss of trade to abutting landowners as a result of the exercise of this police power, so long as it does not amount to a complete taking of the right of access. City of San Antonio v. Pigeonhole Parking of Texas, Inc., [158] Tex. [318], 311 S.W.2d 218." The case of State v. Albright, Tex.Civ.App., 337 S.W.2d 509, cited and relied upon by appellants is not in point. In that case the effect of the condemnation was to leave remaining a small "land locked triangle * * * with no outlet to a public street without trespassing on lands of others; which was not so before the taking." The Albright case cites the Pennysavers' case as authority for the proposition that if *all* right of access is denied there is compensable damage. Appellants have not been denied access to the highway, but have access by means of an access road. They are not entitled to damages because of the construction of and regulation of the controlled access highway in such manner as to deny them direct access to the two inner

express roadways. It follows that the court did not err in striking testimony tending to show that the remainder of defendants' property would depreciate in value because of difficulty in getting to such property after the proposed construction. Neither did the court err in repeatedly instructing the jury not to consider any difficulty in travel occasioned by circuitous routes to appellants' remaining property after the proposed construction. The instruction was proper and the court did not err in so instructing the jury on every occasion that the question arose. Points urging error in this respect are overruled.

■■■ We, likewise, do not agree with appellants' contention that the court erred in refusing to admit testimony concerning the length of time it would take to complete the project and instructing the jury not to consider any damage to appellants' remaining property because of temporary inconvenience arising during the construction of the controlled access highway. There was no showing of any damage to appellants for which they were entitled to recover for any possible injury arising during the construction period. Even if it should be held that appellants would be entitled to damages because of lack of access to the highway during construction, the evidence was to the effect that there would be no interference with such access during the period of construction. There was no evidence of any compensable damage because of dust or noise. Appellants' points in this connection are overruled.

The disposition we have made of points bearing upon the liability of the State for damages to appellants' land renders it unnecessary to pass upon the remaining point complaining of the exclusion of certain exhibits and other evidence material to a determination of the amount of the claimed damages. We have carefully considered all points and find no reversible error.

The judgment of the trial court is affirmed.