**STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Missouri,
Plaintiff-Appellant,**

**v.**

**G. A. BROCKFELD et al., Exceptions to the
Award of George F. Mohr, Genevieve B.
Mohr, John G. Speed, Trustee, Alberta E.
Denny, Sinclair Refining Company, a cor-
poration, Noah C. Hase, Irene Hase, Peo-
ple's Bank of Hawk Point, a corporation,
William Sands and Fern Sands, Defend-
ants-Respondents.**

**No. 50883.**

Supreme Court of Missouri,

En Banc.

March 8, 1965.

Rehearing Denied April 12, 1965.

Robert L. Hyder, Bruce A. Ring, Jeffer-
son City, for appellant.

Alvin Juergensmeyer, Warrenton, Wehr-
le & Wehrle, Clayton, for respondents
George F. Mohr and Genevieve B. Mohr.

HYDE, Judge.

This case, transferred from the St. Louis
Court of Appeals, is a condemnation pro-
ceeding for right of way for the construc-
tion of Interstate Route 70. The facts are
stated in opinion of the Court of Appeals,

378 S.W.2d 254, to which reference is made for details.

The situation was that respondents Mohrs owned land (1.67 acres) abutting U. S. Highway 40, leased to respondent Sinclair Refining Company. Sinclair built a gasoline service station on it and leased it to respondent Sands. Route 40 had two separate concrete pavements; the north lane 18 feet wide provided two lanes for westbound traffic, the south lane 24 feet wide provided two lanes for eastbound traffic. There were two entrances from the eastbound traffic lanes of Route 40 to respondents' service station, one at the east end and one at the west end of their property. There was also a crossover between the separate traffic lanes of Route 40 near the western entrance to the service station.

Interstate 70 also is built with east and westbound through traffic lanes, using for its eastbound traffic lane the eastbound traffic lane of Highway 40 but resurfacing it, and constructing a new 24-foot westbound traffic lane on substantially the same location as the old 18 foot of Route 40. However, on each side of these through traffic lanes, an outer roadway, 20 feet wide, is constructed, on which traffic can proceed in both directions. Respondents had access from their property only to the south outer road, which went to interchanges at Warrenton on the west and at Wright City on the east, each about three miles distant. Traffic could only enter the Interstate 70 through traffic lanes at such interchanges and these were the ones nearest to respondents' property. A county road, making a grade crossing of Route 40, east of respondents' property, will cross Interstate 70 on an overpass but there no interchange is provided to go on to Interstate 70 from that road. The outer roadway is on the old right of way of Route 40 except for a small tract consisting of .036 acre at the northeast corner of respondents' land near the county road which was taken for the purpose of constructing part of the outer roadway toward the county road at the overpass.

The Court of Appeals thus stated respondents' contention: "[R]espondents are not claiming damages because they will not have direct access to Interstate 70 when completed. They do not claim they have any such right of access. Nor do they deny that the appellant has the right, in a proper proceedings, to destroy or impair their right of access to existing Highway 40. But they do contend that they had an easement of access to pre-existing U. S. 40 and that it was a property right which could not be taken from them *by condemnation without just compensation.*" This really amounts to a claim that the state cannot impose traffic regulations on any lanes of existing highways which change direction of travel and places of entry on such lanes, regardless of means of access provided for abutting landowners, without payment of compensation to them for change in the kind of access they had. This claim is unsound.

Decisions of the courts are conflicting on the nature of an abutter's right of access, the nature of the loss suffered, the nature of a frontage road in a limited access highway and the right of an abutter to be compensated for the loss of direct access to main highway traffic lanes. It is said: "The decisions of the courts seem to fall in three major categories:

"(1) That any loss which results from being placed upon a frontage road is not to be compensated in eminent domain, whether land is taken or not.

"(2) That any loss resulting from being placed on a frontage road should be compensated, but the frontage road should be considered in mitigation.

"(3) That any loss resulting from being placed upon a frontage road should be compensated only when accompanied by a taking of land and that the existence of a frontage road should be considered in mitigation." State of New Mexico ex rel. State Highway Comm. v. Danfelser, 72 N.M. 361, 384 P.2d 241, 244; Stefan Auto Body v.

State Highway Commission, 21 Wis.2d 363, 124 N.W.2d 319, 322, both of which held there should be no compensation where a frontage road provided access. See also Arkansas State Highway Commission v. Bingham, 231 Ark. 934, 333 S.W.2d 728; Langley Shopping Center v. State Roads Commission of Maryland, 213 Md. 230, 131 A.2d 690; Muse v. Mississippi State Highway Commission, 233 Miss. 694, 103 So.2d 839; State of New Mexico ex rel. State Highway Comm. v. Lavasek, 73 N.M. 33, 385 P.2d 361; Selig v. State of New York, 10 N.Y.2d 34, 217 N.Y.S.2d 33, 176 N.E.2d 59; Darnall v. State of South Dakota, 79 S.D. 59, 108 N.W.2d 201; Nelson v. State Highway Board, 110 Vt. 44, 1 A.2d 689, 118 A.L.R. 915.

As stated in Pennysavers Oil Co. v. State of Texas, (Tex.Civ.App.) 334 S.W.2d 546, 548–549, where freeway lanes were built east of the old highway on which plaintiff's service station was located reducing it to a frontage road: "The State has the right under the provisions of Art. 6674w, supra, and its police power, to provide for one-way traffic, no U turns, division barriers, no left or right turns, traffic lanes, speeding and parking regulations, circuitous routes; for the changing of highways generally, and is not responsible for loss of trade to abutting landowners as a result of the exercise of this police power, so long as it does not amount to a complete taking of the right of access. * * * If the State had decided to build this Freeway a block or a mile from appellant's property, it would likewise have lost its trade, but no abutting property owner has a vested interest in the traffic that passes in front of his property, and if this traffic is diverted by the State building a road at another place, and the traveling public prefer to travel the new road and abandon the old road, the State cannot be held liable for any loss of trade suffered by an abutting landowner on the old abandoned road." See also Holbrook v. State of Texas (Tex.Civ.App.), 355 S.W.2d 235; State of Texas v. Baker Bros. Nursery (Tex.Sup.), 366 S.W.2d 212.

Of course, a complete blocking of an abutter's access takes from him a property right in the nature of an easement and this requires resort to eminent domain. However, ingress and egress to a particular lane of a highway and direction of travel thereon can be regulated under the police power of the state for public safety and general welfare, without compensation to an abutter who is furnished unrestricted right of access to a lane of the highway upon which his property abuts and which connects with the restricted lanes at designated points. (See discussion in the following Law Review articles: 13 Mo.Law Review 19 (1948); 3 Stanford Law Review 298, 304 (1951); 27 Washington Law Review 111, 123 (1952); 43 Iowa Law Review 258, 265 (1958); 38 Nebraska Law Review 407, 423 (1959); 11 Baylor Law Review 149 (1959); 56 Northwestern Law Review 587, 603 (1961). In this case, respondents have been furnished unrestricted access to a lane of the highway, an outer road on its right of way, along the entire front of their property. Therefore, any compensation resulting from this situation would have to be for circuity of travel rather than for loss of access to the highway.

Cases contrary to this conclusion are cited and discussed in the opinion of the Court of Appeals but as the court recognized there has been no previous opinion in accord with them in this state. A more recent case now cited is Hendrickson v. State of Minnesota, 267 Minn. 436, 127 N.W.2d 165, brought on the theory of "inverse condemnation," in which no land of the plaintiffs was taken and the old highway, a single two-way traffic pavement, was left as it was but designated an outer service lane. Two new traffic lanes were built on the opposite side of the old pavement from plaintiffs' property, one for southbound traffic and one for northbound traffic. The court held plaintiffs had a right to reasonably convenient access to the main thoroughfare and would be entitled to damages for its substantial impairment. An award of damages, in this situation, is contrary to long settled

Missouri law as well as respondents' theory of this case, which the Court of Appeals recognized by saying: "If Old 40 Highway had become the outer road, then respondents would not be damaged by loss of access for the reason that their access would not be disturbed." For a case so holding see State ex rel. Merritt v. Linzell, 163 Ohio St. 97, 126 N.E.2d 53. Hill-Behan Lumber Co. v. State Highway Commission, 347 Mo. 671, 148 S.W.2d 499, was an action for consequential damages for impairment of plaintiff's means of ingress and egress by building a viaduct in a public street. Plaintiff's property abutted on the street and no part of it was taken but plaintiff's access to and from the viaduct was by ramps. We held that, in the absence of an authorizing statute, consequential damages could not be recovered from the state and pointed out that such statutes existed only as to cities. (In the Hendrickson case, the court did find legislative intent to compensate owners in the situation therein involved, 127 N.W. 2d 1.c. 169, footnote 1.) In the Hill-Behan case, we followed Zoll v. St. Louis County, 343 Mo. 1031, 124 S.W.2d 1168, and the many cases cited therein, which involved a claim for consequential damages for change of grade, no part of plaintiffs' property being taken. See also State ex rel. State Highway Commission v. Lynch, Mo. Sup., 297 S.W.2d 400. In this case, while a small tract of respondents' land was taken, it was taken to become a part of the outer road where it angled toward the county road overpass and thus furnished access for this corner of respondents' land to this outer roadway.

We can see no difference of legal significance in leaving an old pavement as an outer road and building new pavement for limited access thoroughfares or in building a new outer road pavement and using the old pavement (or new pavement on its location) for the limited access thoroughfares. In either situation the abutting owner would have the same access to his property and the same circuity of travel to reach the throughway lanes on which he desired to travel. The real basis for complaint of an abutting owner, which makes a difference to him if he operates a commercial enterprise, is diversion of traffic. However, it is generally well settled (as shown by the cases herein cited; see also 18 Am.Jur. 899, Eminent Domain, Sec. 259; 29A C.J.S. Eminent Domain § 162, p. 702) that such an owner has no right to a continuation of the flow of traffic directly in front of his property (which could be affected just as much by building a new road a block or a mile away as by limiting access to the old road and giving him access by an outer road); and that diminution in the value of land because of such diversion of traffic is the result of an exercise of the police power and is noncompensable. See State ex rel. State Highway Commission v. Meier, 388 S.W.2d 855, decided concurrently herewith. Therefore, it was error to admit evidence of damages based on loss of direct access to previously existing U. S. Highway 40 lanes and to instruct the jury to consider this in determining compensation to be paid to respondents. Appellant would be entitled to an instruction withdrawing improper elements of damage which should be modeled after 30.02, Missouri Approved Jury Instructions.

The judgment is reversed and the cause remanded.

EAGER, C. J., STORCKMAN, HOLMAN and HENLEY, JJ., and STONE, Special Judge, concur.

FINCH, J., dissents in separate dissenting opinion filed.

DALTON, J., not sitting.

FINCH, Judge (dissenting).

I find that I am unable to concur with some of the conclusions stated in the majority opinion or with its decision to

reverse and remand this case, and I respectfully dissent therefrom for the reasons herein set out.

We start with an agreed premise that under the law of Missouri an abutting property owner on an existing highway has a right of access to that highway which is known as an easement appurtenant. This is recognized as a property right. In State ex rel. State Highway Commission v. James, 356 Mo. 1161, 1168, 205 S.W.2d 534, 537, this court said: "The fee to land taken for right-of-way remains in the abutting owners, subject to the right of the State to constuct and maintain a highway for the public use. In addition to an interest in the fee, abutting owners have an easement of access from their property to the highway. This constitutes a property right, an interest in land." The writers of some Law Review articles have speculated as to the origin of this right and just what its fate should be as compared with the rights of the general public in the establishment of modern limited access highways. We need not concern ourselves therewith, however, because both appellant herein and the majority opinion recognize the existence of this property right.

Secondly, we have an additional premise that if this right of access is extinguished, the abutting property owner is entitled to compensation. Appellant's brief states: "We agree that a property owner abutting upon an existing conventional type highway has a right of access which is a property right. We also agree that if this right is taken, the owner is entitled to any decrease resulting in the value of his property from that taking." The majority opinion states: "Of course, a complete blocking of an abutter's access takes from him a property right in the nature of an easement and this requires resort to eminent domain."

A third agreed premise is that the State, under its police power, has the right, for reasons of safety, to control traffic by such actions as providing for one-way traffic, prohibiting "U" turns or left turns, erecting divider strips, controlling speed, and like actions.

A fourth agreed premise is that the abutting property owner has no property right in traffic. Thus, if the State should build a new highway at a new location, leaving the existing highway as it was, the abutter has no claim by reason of the fact that traffic has been diverted to the new highway.

The problem then becomes one of applying these agreed principles to the facts and reaching a conclusion as to whether what the State has done has been merely to exercise its right to control traffic under the police power without taking the property owner's right of access, or whether what the State has done takes or destroys the abutting property owner's right of access.

The majority opinion reaches the conclusion that the construction by appellant of the so-called outer roadway on the principal right-of-way (when this term "principal right-of-way" is used herein it means the wide main right-of-way on which the thruways are located) in front of the Mohr property preserves their pre-existing right of access. In so holding the majority opinion adopts the position of appellant as expressed in argument before this court that when the abutting property owner is permitted to cross the property line between his property and the highway right-of-way and proceed on a roadway provided thereon, he is accorded his right of access, and everything the State does thereafter to control traffic is an exercise of the police power, for which no compensation is due. The majority opinion states it in this manner: "In this case, respondents have been furnished unrestricted access to a lane of the highway, an outer road on its right of way, along the entire front of their property. Therefore, any compensation resulting from this situation would have to

be for circuity of travel rather than for loss of access to the highway."

In the argument before this court at this session of the case of State ex rel. State Highway Commission v. Meier et al., 388 S.W.2d 855 (hereinafter referred to as the Meier case), decided simultaneously herewith, the Chief Counsel for the State Highway Commission undertook to delineate the State's position with reference to this question of access of abutting property owners in these limited access highway situations. The Meier case involved substantially the same question as is involved herein. The Chief Counsel explained that when an access road is located on the principal right-of-way, it is known as an "outer roadway." When the access road leaves the principal right-of-way, it immediately loses its designation as an "outer roadway" and becomes a "service road." The latter might be a road constructed or located entirely off the principal right-of-way or it might be a continuation of an "outer roadway" which leaves the principal right-of-way. This is true even though it leaves the principal right-of-way only a few feet. The State's policy, as enunciated in the argument of the Meier case, is that an abutter who has an "outer roadway" in front of his property can cross onto the principal right-of-way and has lost no access, but an abutter who is served by a "service road" (and has no "outer roadway" in front of his place) has suffered a complete loss of access and is entitled to just compensation.

The Chief Counsel gave an illustration of a "service road" in which the State acquired an easement which joined but was not a part of the principal right-of-way. On it the State constructed a "service road" which ran parallel to the principal right-of-way to a point of intersection with a county road which in turn crossed the limited access road via an overpass. There was no interchange at that point and the owner would have had to follow a more circuitous route but concededly would reach an interchange eventually. The Chief Counsel stated that this was a "service road," not an "outer roadway," and an abutter would be entitled to compensation. Obviously, the same would be true even if an interchange were added at that overpass, because the test of the State is whether the owner has an "outer roadway" or a "service road."

Application of these principles illustrates, in my judgment, the fallacy in the position of appellant and the majority opinion in holding that there is no loss of access where there is an "outer roadway" in front of the property of the particular abutting property owner. For example, assume in this particular case that the State Highway Commission, instead of building an "outer roadway" on the right-of-way in front of Mohr, had constructed a "service road" which ran parallel to the thruway but which ran along the back side of Mohr's filling station. The Mohr property thus would be located between the right-of-way on which the thruways were constructed and the "service road." Assume further that said "service road" was built exactly parallel to the thruways and went to Wright City on the east and Warrenton on the west, at which places it would be possible to enter or leave the thruways via the interchanges constructed at those two points. Under this assumed set of facts, the Mohrs would travel identically the same distance to get to either Warrenton or Wright City, and would travel identically the same distance to enter the thruway at either Warrenton or Wright City. The only difference would be that the access road would not be on the principal right-of-way. However, in view of the fact that the Mohrs, in this hypothetical situation, would not be able to actually enter an access road on the main right-of-way in front of their premises, they would be held, under the position of appellant, to have suffered a complete loss of access for which they would be entitled to compensation. The construction and existence of the "service road" would simply be in mitigation of their damages which they would have suffered if their property had been landlocked,

with no access road provided. Under the circumstances, to conclude that the Mohrs, when served by the "service road" running south of their property and separated a few feet from the main right-of-way, in the hypothetical situation, are entitled to compensation on the basis of loss of access, whereas the Mohrs, when served by the "outer roadway" on the main right-of-way, have suffered no loss of access, is to find a distinction where there is no real difference. The fallacy in this position can be dramatized even more under the following hypothetical set of facts: Suppose that the appellant built on the main right-of-way an "outer roadway" in front of the Mohrs, and then shortly after leaving the boundary of the Mohr property, the "outer roadway" leaves the main right-of-way, and thereafter via a "service road" goes to Wright City to the east and to Warrenton on the west. This might be a "service road" which went fairly directly or by a more circuitous route. In either event, the application of the philosophy of appellant and the conclusions of the majority opinion would mean that the Mohrs have suffered no loss of access since they are served in front of their property by an "outer roadway." At the same time, an abutting property owner adjacent to Mohr but served by the "service road" as it leaves the main right-of-way would be recognized to have had his right of access destroyed, for which he would be entitled to compensation. In this instance, the property owners cannot, as the Chief Counsel expressed it, "step across" from their property onto the principal right-of-way. Instead, they must go onto the "service road" and thence to the interchange. This means, according to the position of the State Highway Commission, that this property owner has lost his right of access even though he travels identically the same access road as the Mohrs.

The fact that appellant recognizes that the moment the access road leaves the principal right-of-way, it becomes a "service road" and no longer is considered by them a part of the highway, illustrates the true nature of this access road. In some instances such road might leave the main right-of-way at points and then return again, and this might be repeated at other points. Surely, under such circumstances, the same identical access road cannot be a part of the main highway (an integral part of one facility, as the appellant's brief expresses it) in some instances and not in others, dependent merely on whether at that point it happens to lie within or without the limits of the principal right-of-way. This illustration serves to put the access road in its true light, and to demonstrate that it is not in fact a lane of the main highway. Both of the property owners in our assumed situation are on a pre-existing highway. Both are prevented from entering the thruway in front of their place of business. Access to the highway has been eliminated for both property owners. The State has provided an access road whereby they can reach the highway at an interchange. Each must travel the same access road to reach the same interchange. The sole and only difference is that in one place the access road runs on the principal right-of-way and in other places it does not, and it is denominated an "outer roadway" or a "service road," depending on the place where it is located. The owner on the "outer roadway," according to the State and the majority opinion, has suffered no loss of access and is entitled to no compensation. The one on the "service road," according to the State and as a necessary corollary of the majority opinion, has had a complete loss of access, for which he would be entitled to compensation. I am of the opinion that this distinction is completely untenable. It seems to me that it erroneously assumes the fact that the access roadway is another lane of the main highway merely because it is located on the principal right-of-way.

Admittedly, it is difficult to draw a clear line of distinction between what is exercise of the police power and what should be acquisition by eminent domain, and what is loss of access and what is loss of traffic

only. Loss of access necessarily involves loss of traffic, but loss of traffic need not necessarily involve loss of access. The fact that there is loss of traffic does not mean the owner has no loss of a property right, if there is also a loss of access. It might be helpful to note what is said in 43 Iowa Law Review, pages 258, 264, where it is stated: "It is recognized, however, that while traffic regulations are held to come under the police power, they are directed to people already using the highway and only indirectly affect the abutting owner's right of access. The controlled-access facilities statute, on the other hand, is directed solely against the right of abutting owners to unlimited access to the highways."

This difficulty of handling the question of access rights of abutting property owners is illustrated by the variation in policy of state highway departments in dealing therewith. An article in 56 Northwestern University Law Review, page 587, entitled "Frontage Roads: To Compensate or not to Compensate," states on pages 600 and 601 that a survey indicated that twenty-two states compensate a landowner who formerly abutted the main highway when placed on a frontage road. It shows further that twenty-one states (including Missouri) do not compensate the landowner under those circumstances. There were varying positions in other states.

An examination of the condemnation petition herein sheds some light on whether the State actually was condemning a right of access in this case. Paragraph 3 of that petition recites that the Chief Engineer of appellant has recommended to the Commission that access to, from and across part of the highway be fully limited as shown on the plans, and that a copy of the plans for the part of the highway involved in this condemnation proceeding is filed in the Clerk's office and made a part of the condemnation petition by reference. Paragraph 5 of the petition states as follows: "Relator has, in compliance with law, found, determined and declared that public interest and safety require that direct access and right of access to, from and across said section of state highway be fully limited as indicated on said plans, that no abutting owner shall have the right of direct access to said highway or its right-of-way except that access will be permitted to any adjacent outer-roadway to which access is not specifically prohibited by the special symbol denoting 'No Right of Access' as shown on said plans." Paragraph 6 recites that the lands being condemned "or rights in which are being affected or extinguished, and which are described herein" lie in Warren County. Paragraph 7 recites that the Commission has been unable to agree with the owners on compensation "of the lands, property and rights herein described." Paragraph 8 then says that for the construction of the highway it is necessary to acquire the lands, properties "or rights" and that the Commission has so determined and directed the Chief Counsel to purchase or condemn same. Thereafter various paragraphs describe the interests of various defendants, and Paragraph 23 refers to the property in this condemnation suit and it contains the language, "all direct access to the thruway of which from abutting property will be prohibited or limited except as herein set out." Thereafter in Paragraph 34 in the prayer of the petition, the Commission asks that the "land, properties or rights herein described" be condemned.

I would assume that everyone would agree that a condemnation proceeding is not involved in or necessary to an exercise of the police power. If, for example, the Highway Department decides to erect a median strip down the middle of the highway, it goes ahead and does it. In this instance, however, these various allegations in the condemnation petition establish the fact that the limitation or extinguishment of the rights of access was by condemna-

tion.[1] This could be done only on the basis of payment of whatever is just compensation for the lands, properties or rights thereby acquired.

I do not deem it necessary to review or discuss all of the various cases cited in the majority opinion herein or in the majority opinion in the Meier case. The applicable legal principles really are not in dispute. The differences arise in a consideration of the facts and the application of the legal principles thereto. I am not convinced that the result of the conclusions herein expressed is to overrule earlier Missouri cases or to reach a conclusion necessarily inconsistent therewith. It is possible to reason by analogy therefrom, as the majority opinions herein and in the Meier case have done, but I do not find any case which rules the question of whether an "outer roadway" is sufficient to prevent the abutting owner from suffering a loss of his right of access. The case of State ex rel. State Highway Commission v. Vorhof-Duenke Company, Mo., 366 S.W.2d 329, involved a situation where an existing highway was being converted to a limited access highway, and the opinion says the landowner was to be served by "a service road, or outer roadway." Language in the opinion at least implies a recognition of a change in access and the opinion holds that it was inappropriate in an instruction on special benefits to refer to the owner's property as located "directly on an improved highway," but the appeal was by the landowner and did not involve specifically the question with which we are concerned.

In my judgment, an analysis of the nature of the access road as hereinbefore set out illustrates that the abutting property owner has suffered a loss of access. If the result I would reach is inconsistent with the rulings in any of the previous Missouri cases, then to that extent, and to that extent only, I would overrule or modify those cases.

I would affirm the judgment.

1. In State ex rel. State Highway Commission v. Vorhof-Duenke Company, Mo., 366 S.W.2d 329, 335, wherein the petition contained similar language, this court said: "Where, as here, the condemnation of existing rights of access are involved, the ascertainment of special benefits to the landowners' damages becomes even more complicated."