**STATE ex rel. STATE HIGHWAY COMMISSION of Missouri, Respondent,**

v.

**Max Allen NICKERSON et al., Exceptions of I. J. Nickerson and Ruby Mae Nickerson, his wife, Appellants.**

No. 60458.

Supreme Court of Missouri,
En Banc.

March 13, 1979.

Respondents Motion for Rehearing
Denied April 10, 1979.

Robert C. Smith, Smith, Lewis & Rogers, Columbia, Robert J. Quigley, Kay & Quigley, Eldon, for appellants.

Thomas E. Cheatham, Bruce A. Ring, State Highway Commission, Jefferson City, for respondent.

FINCH, Senior Judge.

This appeal, written on recent reassignment, involves a case wherein State Highway Commission of Missouri (respondent) filed condemnation proceedings to acquire land for right of way for a relocated U. S. Highway 54 in Miller County. One of the tracts, 4.13 acres located on the west side of old U. S. Highway 54 approximately two miles south of Eldon, belonged to I. J. Nickerson and wife (appellants). Respondent sought to condemn 2.01 acres off of the back of west side of that tract. The portion to be taken did not include the land on which a restaurant, a filling station and various appurtenances were located but did take part of the sewage lagoon and the area into which the sewage lagoon drained.

After a change of venue to Moniteau County the case was tried on exceptions to the commissioner's award. The jury returned a verdict in the amount of $2500 in favor of the appellants as damages for the property condemned. Appellants appealed to the Missouri Court of Appeals, Western District, which reversed and remanded for new trial. This court sustained respondent's motion to transfer and we now decide the case as though here on direct appeal. Mo.Const. Art. V, § 10. We reverse and remand.

Appellants assert four alleged trial errors which they say entitle them to a new trial. The first of these involves the action of the trial judge in requiring that appellants' counsel add to the usual question asked valuation witnesses a "tail" which instructed the witness to leave any diversion of traffic out of consideration in assessing the fair market value of the land after the taking.

It is well established in Missouri that where part of an owner's property is condemned, he is entitled to receive as compensation therefor the difference between the fair market value of the entire tract immediately before the date of taking and the fair market value of the property remaining immediately after the taking. *State ex rel. State Highway Commission v. Kendrick*, 383 S.W.2d 740, 745 (Mo.1964); *Kamo*

*Electric Cooperative v. Baker*, 365 Mo. 814, 287 S.W.2d 858, 861–62 (1956); *State ex rel. State Highway Commission v. Cady*, 400 S.W.2d 481, 484 (Mo.App.1965). MAI Instruction 9.02 is prescribed for use in such situations and was utilized in this case in Instruction No. 3 which was as follows:

"You must award defendants such sum as you believe was the difference between the fair market value of defendants' whole property immediately before the taking on October 18, 1971, and the value of defendants' remaining property immediately after such taking, which difference in value is the direct result of the taking and of the uses which plaintiff has the right to make of the property taken."

The notes on use for MAI 9.02 require that fair market value be defined by utilizing MAI 16.02. That was done in this case in Instruction No. 4 which provided:

"The term 'fair market value' means the price which the property in question would bring when offered for sale by one willing but not obliged to sell it, and is bought by one willing or desirous to purchase it but who is not compelled to do so.

In determining fair market value you should take into consideration all the uses to which the property may best be applied or for which it is best adapted, under existing conditions and under conditions to be reasonably expected in the near future."

Appellants called several witnesses to testify as to the amount of appellants' damages. Counsel for appellants, after qualifying these witnesses to testify as to value, first asked them what in their opinion was the fair market value of the 4.13 acre tract immediately prior to the taking on October 18, 1971. Each answered that question. Counsel then sought to elicit the opinion of the witnesses as to the fair market value of the tract remaining immediately after the taking of the 2.01 acres on October 18, 1971. However, counsel was not permitted to ask these witnesses what in their opinion was the fair market value of the 2.11 acre tract remaining immediately after the taking. Instead, counsel was required, over objec-

tion, to add to those questions a tail which instructed the witnesses that in arriving at fair market value immediately after the taking they should leave out of consideration any diversion of traffic from the highway in front of the tract remaining. This direction was given to counsel during a conference which occurred as a part of pretrial proceedings. In that conference the trial court stated:

"COURT: Since the possibility appears that the major item of defendants' alleged loss will in fact be the diversion of traffic from old Highway 54 to the new super highway, that is to say, a resultant loss of travel on the old highway on which Mr. Nickerson's restaurant fronted, I think it would be improper for defendant to ask merely the bald question of his witnesses, "What was the value before and after the taking?" I think it would be improper because I think the witness will invariably be encouraged by so broad a question to take into consideration the possible loss of business resulting from the diversion of traffic. I understand the rule to be that the diversion of traffic is an exercise of the State's police power and is in no sense a condemnation, and is, as the cases say, damnum absque injuria, and is entirely improper for the jury to consider as element of damages. Having that view in mind, I'm instructing counsel for defendant to phrase his question with a tail on it which will instruct the witness in answering the question to leave out of consideration entirely the question of the diversion of traffic from the old highway to the new one."

This requirement by the court resulted in this situation. By instructions 3 and 4 the jury were told to determine from the evidence the fair market value of the 4.13 acre tract just before the taking on October 18, 1971, and the fair market value of the 2.11 acre tract immediately after the taking. They were told that these values were to be the price which would have been agreed upon by a willing but unobligated seller and a willing but unobligated buyer. In other words, it told the jury that in awarding damages it should determine the difference

in what this 4.13 acre tract would have sold for and what this 2.11 acre tract would have sold for. These instructions, as previously noted, conform to the established rule in Missouri.

However, instead of permitting appellants to offer proof by their valuation experts as to those two sums referred to in the court's instructions, the court compelled appellants to present testimony which applied a different test. Witnesses were told first to give the fair market value of the 4.13 acre tract immediately before condemnation and then to give the fair market value of the remaining 2.11 acre tract on a basis which assumed no loss of traffic on the highway in front of the 2.11 acre tract. They were not asked what price would be established by a willing buyer and seller as the fair market value of the 2.11 acre tract as it actually existed after the taking. Instead, they were to value a hypothetical 2.11 acre tract with no change in traffic. In other words, they were told to value a tract which did not exist. What the court did created an anomalous situation wherein the jury was told to apply one test but was given evidence which required it to utilize a different test. That necessarily was confusing to the jury. Furthermore, the question as to value of the remaining tract was not consistent with the test established in previous cases. *State ex rel. State Highway Commission v. Kendrick, supra; Kamo Electric Cooperative v. Baker, supra; State ex rel. State Highway Commission v. Cady, supra.*

If the questions which the court required counsel for appellants to ask where proper, it would follow that MAI 9.02 and 16.02 should have been modified so as to inform the jury that fair market value after the taking means the price which the property remaining after the taking would bring after eliminating any consideration of loss of traffic. It is clear that such modification of MAI 9.02 and 16.02 is not contemplated or permissible. See Notes on Use and Committee's Comment following MAI 9.02 and 16.02. That being true, it necessarily follows that the questions asked witnesses as

to before and after fair market value should have been framed to elicit the information which the instructions told the jury to utilize. They should not have been qualified by tails such as the one the court required in this case.

Respondent, in seeking to justify the action of the trial court in requiring use of the tail, cites and relies on *State ex rel. State Highway Commission v. Brockfeld*, 388 S.W.2d 862 (Mo. banc 1965), cert. den. 382 U.S. 846, 86 S.Ct. 79, 15 L.Ed.2d 86, and *State ex rel. State Highway Commission v. Meier*, 388 S.W.2d 855 (Mo. banc 1965), cert. den. 385 U.S. 204, 87 S.Ct. 407, 17 L.Ed.2d 300 (1966). In both of those cases the landowners contended that by converting an existing highway to a limited access highway and requiring the landowners to utilize an outer roadway to reach the limited access highway the State was taking away an existing property right in the form of a right of direct access to the highway for which damages should be awarded. This court rejected those claims, holding that the landowners were not losing their right of access and that the trial court had erroneously admitted evidence as to diversion of traffic. In the course of those rulings the court stated that an adjoining property owner does not have a property right in traffic on the highway and that the State, in the exercise of its police power, has the right to redirect or divert traffic. However, the court did not hold that where there is a partial taking the test as to before and after fair market value is other than as stated in MAI 9.02 and 16.02.

In this case, unlike *Brockfeld* and *Meier*, we do not deal with a claim that diversion of traffic is a special item of damage which the landowner may show and for which damages are to be awarded. Instead, the issue is whether appellants were entitled to ask their valuation witnesses, after qualifying them to testify, as to their opinion as to what value a willing, unobligated seller and a willing, unobligated buyer would take and pay for the whole property immediately before the taking and for the remaining property immediately after the taking. Under the decisions in *State ex rel. State*

*Highway Commission v. Kendrick, supra, Kamo Electric Cooperative v. Baker, supra; State ex rel. State Highway Commission v. Cady, supra,* and numerous other cases which state the same rule, appellants were entitled to offer such evidence. It was reversible error to require that a different test be applied by the addition of the tail to the question. Hence, the judgment must be reversed and the case remanded for retrial.

In view of this conclusion we need not rule on appellants' other assignments of error where it is not clear that the same questions necessarily will arise on retrial. We have concluded that such is the situation. One assignment is that certain of respondent's witnesses were not shown by the evidence to be qualified to testify, but we do not know what the showing will be on retrial. Another assignment is that questions on cross-examination of valuation witnesses were improper. Some of these questions were not objected to and may not be asked on retrial. A consideration of this issue would not be of value. Finally, there is a contention that respondent's photographs of some of the property remaining after the taking were inadmissible. These photos apparently were taken just before trial and purportedly were offered to show the condition at that time rather than as of the date of taking. We do not know that these photographs will be offered on retrial. If they are perhaps the record will more clearly establish the purpose for which they are offered and their relevancy and whatever objections are made will more clearly state the reasons therefor.

Reversed and remanded.

BARDGETT, RENDLEN, SEILER, JJ., and HOUSER, Senior Judge, concur.

DONNELLY, J., dissents in separate dissenting opinion filed.

MORGAN, C. J., dissents and concurs with separate dissenting opinion of DONNELLY, J.

SIMEONE and WELLIVER, JJ., not participating because not members of the court when cause was submitted.

DONNELLY, Judge, dissenting.

The issue in this case is whether the diversion of traffic away from an owner's property caused by a relocation or other change in a highway by the State is a taking or element of a taking for which compensation is due.

Until today, the law in Missouri has been that such a diversion is not a compensable taking, *State ex rel. State Highway Commission v. Brockfeld,* 388 S.W.2d 862 (Mo. banc 1965); *State ex rel. State Highway Commission v. Meier,* 388 S.W.2d 855 (Mo. banc 1965). A majority of United States jurisdictions adhere to this rule, *Mackie v. Watt,* 374 Mich. 300, 132 N.W.2d 113, 118 (1965); 2A *Nichols on Eminent Domain* § 6.4443[4], 3rd Ed. (1976).

In *Meier,* the State changed the highway on which respondent's motel was located from one to which respondent's driveway directly connected to one of limited access. Part of respondent's property was taken. After the change respondent's driveway connected to the outer access road of the highway. Travelers could reach the motel only by the more circuitous use of a distant interchange and the access road. The issue was whether respondent was entitled to compensation for the reduced value of her property due to the change in traffic flow. This Court stated,

"[T]he State and any of its agencies are not liable for any decrease of property values by reason of such diversion of traffic, because such damages are 'damnum absque injuria', or damage without legal injury. The trial court, therefore, erred in admitting evidence of depreciation of the value of respondent's property by reason of the diversion of traffic and the so-called 'loss of access.'" *Id.* at 857.

The trial court in the instant case properly implemented this law by requiring appellant's counsel to ask the expert witnesses the "tailed" questions.

Today's decision has two immediately obvious effects.

One is that of shifting the cost of loss of property values due to diversions of traffic to the State. The added cost will to some extent affect the evaluation of proposed changes in roadways. As a corollary, one might also ask whether the State should be entitled to tax or otherwise collect the increased value accruing to other property owners as a result of beneficial changes in traffic flow. This may or may not be good policy.

The other effect is to grant windfall profits to the current owners of property along the State's highways. Prior to today's decision the market value of property along the State's highways necessarily discounted the risk that the State would divert traffic from the property; the value was thus lower by some amount. Today's decision removes the risk of traffic diversion by telling property owners that they will be compensated for any such future diversion; the value of their property is thus higher because the risk is removed. The current owners will receive the one-time windfall profit which will result as the market adjusts from the higher risk/lower value level under the law prior to today to the lower risk/higher value level under the law announced by this decision. This may or may not be good policy.

The decision announced today overrules *Brockfeld* and *Meier* sub silentio and embarks on a new course without addressing the desirability of this course. Without expressing my views on the policies at issue, I must dissent from a decision which overrules our prior law and sets a new course without addressing the issues or considering the consequences.

Accordingly, I respectfully dissent.

PER CURIAM:

In its motion for rehearing respondent strenuously argues that this Court has overruled the decisions of this Court in *State ex rel. State Highway Commission v. Brockfeld,* 388 S.W.2d 862 (Mo. Banc 1965) and *State ex rel. State Highway Commission v. Meier,* 388 S.W.2d 855 (Mo. Banc 1965). That contention is incorrect. The Court does not intend to and does not overrule or disturb the decisions in *Brockfeld* or *Meier.*

The issue on this appeal is a simple one. Is it proper for the trial court to require the addition of a tail to the standard question to valuation witnesses asking for their expert opinion as to the value of the owner's remaining property immediately after the taking. We hold that it is not.

This conclusion is consistent with the instructions concerning the use of MAI in condemnation cases. For example, it is well settled that in determining the value of a landowner's remaining property after a taking by condemnation, general benefits conferred upon all property within usable range of the new highway may not be considered by the jury. *State ex rel. State Highway Commission v. Southern Development Co.*, 509 S.W.2d 18 (Mo. 1974). If the jury is to be told not to consider certain evidence or some issue, it is done on request by giving a withdrawal instruction. See MAI 34.01, 34.02 and 34.03 and accompanying Notes on Use. It is not done by adding a tail to questions asked valuation witnesses which says to them to leave out of consideration any loss of traffic or any general benefits conferred upon all property within usable range of the new highway in assessing the fair market value of the land after the taking. If the Court should hold in this case that it was proper to add the tail about leaving diversion of traffic out of consideration, it would follow that a tail about excluding consideration of such things as general benefits would be proper and that the valuation question might end up with several tails.

We hold that the addition of such tails is improper. If there is reason to advise the jury to eliminate consideration of some evidence or some element and one of the parties requests and is entitled to such direction it should be done by a withdrawal instruction in accordance with the Notes on Use to MAI 9.02, 34.01, 34.02 and 34.03.